UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WESTFIELD INSURANCE COMPANY,
a foreign corporation,

    Plaintiff,

v.                                                                 Case No.:

CART SOURCE, LLC, a Florida limited
liability company,

    Defendant.

_____/

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Westfield Insurance Company ("Westfield"), sues Defendant, Cart Source, LLC ("Cart Source"), and alleges:

**NATURE OF THE ACTION**

1. This is an action for declaratory judgment to determine obligations of Westfield, if any, under an insurance policy issued by Westfield to Cart Source.

**JURISDICTION, VENUE, AND PARTIES**

2. This action is brought by Westfield pursuant to the provisions of Rule 57, Federal Rules of Civil Procedure, and The Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, *et seq.* for the purpose of determining questions in actual controversy between the parties as described in detail herein.

3. A declaration is specifically needed as to the rights and other legal responsibilities and obligations of the parties hereto under a policy of insurance issued by Westfield to Cart Source.

4. Westfield is an insurance company incorporated under the laws of the State of Ohio with its principal place of business in Ohio, located at One Park Circle, Westfield Center, Ohio 44251.

5. Cart Source is a Florida limited liability company operating in the state of Florida, whose members are citizens of states other than Ohio.

6. This Court has original jurisdiction pursuant to 28 U.S.C. § 2201, as well as 28 U.S.C. § 1332, as the amount in the underlying controversy exceeds $75,000, exclusive of interest and costs, and because there is complete diversity of citizenship between Westfield and Cart Source. Specifically, the amount-in-controversy requirement is met because the insurance policy at issue potentially provides primary and excess coverage at or in excess of $1,000,000 and the underlying claim involves potential liability to defend and indemnify for an amount well in excess of the jurisdictional threshold.

7. Venue is proper in this district under 28 U.S.C. § 1391 because the acts and events giving rise to the underlying incidents and relief set forth in this action occurred primarily in this district, Cart Source resides in this district for venue purposes, and the declaratory nature of this action relates to a cause of action filed in the Fourth Judicial Circuit, in and for Duval County, Florida, which is also within this district.

## GENERAL ALLEGATIONS

### A. The Underlying Action

8. On April 4, 2023, Winn-Dixie Stores, Inc. ("Winn Dixie") filed suit against Cart Source in a case styled, *Winn-Dixie Stores, Inc. v. Cart Source, LLC*, No. 2023-CA-8207, in the Circuit Court, in and for Duval County, Florida ("Underlying Action").

9. The Underlying Action arises out of an alleged agreement between Winn-Dixie and Cart Source for Cart Source to manufacture grocery shopping carts for Winn-Dixie. A true and accurate copy of the Complaint ("Compl.") filed in the Underlying Action is attached hereto as Exhibit A.

10. In the Underlying Action, Winn-Dixie claims that it "purchased 32,798 shopping carts at $75.00 each[, t]otaling $2,459,850.00." Compl. ¶ 9.

11. Winn-Dixie claims that Cart Source produced faulty shopping carts that "placed the casters/wheels into a user's occupied space thereby causing the contact with the user's lower extremities and creating a tripping hazard." Compl. ¶ 11.

12. Winn-Dixie claims that this resulted in "an enormous increase in trip and fall incidents [involving] these carts." Compl. ¶ 12.

13. Winn-Dixie asserts that it has already paid $447,744.10 in defense of settlement of past claims regarding these carts and that there are "65 additional open claims relating to the trip and falls of these carts." Compl. ¶ 13.

14. Through the Complaint in the Underlying Action, Winn-Dixie has brought seven counts against Cart Source: (1) Breach of Contract; (2) Negligence; (3)

Products Liability—Failure to Warn; (4) Common Law Indemnity; (5) Breach of Express Warranty; (6) Breach of Implied Warranty of Merchantability; and (7) Breach of Warranty of Fitness for a Particular Purpose. *See generally*, Compl.

15. Through the Complaint in the Underlying Action, Winn-Dixie is seeking damages in the amount of $447,744.10 for costs in the defense and/or settlement of past claims; unspecified future damages for costs in the defense and/or settlement of the 65 pending claims as well as any additional future claims; and return of the purchase price of the shopping carts of $2,473,350.00. *See generally*, Compl.

16. Cart Source has sought coverage from Westfield under the policy described herein for the claims and issues alleged by Winn-Dixie through the Complaint in the Underlying Action, but Westfield has declined to provide coverage due to the inapplicability of said policy.

B.  **The Westfield Policy**

17. Westfield issued to Cart Source a Commercial Package Policy, No. CWP 4957150, including relevant to this action a Commercial General Liability Coverage Part, as well as Umbrella Coverage containing the same requirements, with a policy period of September 23, 2019 through September 23, 2020 (together, the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit "B."

18.  Section I of the Policy states as follows:

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

****

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

19.  Section I of the Policy also includes the following relevant exclusions:

**2. Exclusions**

This insurance does not apply to:

****

    **b. Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        **(1)** That the insured would have in the absence of the contract or agreement;

****

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product;"
**(2)** "Your work;" or
**(3)** "Impaired property;" if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

20. The Policy also includes the following definitions in Section V:

**SECTION V – DEFINITIONS**

\*\*\*\*

13. **"**Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

****

16. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

       **(1)** Products that are still in your physical possession; or

       **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

          **(a)** When all of the work called for in your contract has been completed.

          **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

          **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

          Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

****

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

7

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

****

**21.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

****

  **(3)** The providing of or failure to provide warnings or instructions.

  **C.**  **Claims Not Covered And/Or Excluded Under the Policy**

  21.  Under the facts alleged in the Complaint, Westfield has doubt and uncertainty as to whether any of the claims are encompassed by the Policy as it appears that such claims are either not covered and/or are excluded from coverage.

  22.  Westfield specifically seeks a declaration that the claims alleged in the Complaint are not covered and are otherwise excluded from any coverage by the Policy.

  23.  Applicable here, the Policy provides Westfield will only pay damages that Cart Source becomes legally obligated to pay, where such damages arise because of "bodily injury" or "property damage" caused by an "occurrence" during the applicable policy period. Policy, Sec. I, Cov. A, ¶ 1.a. There do not appear to be claims or allegations that Winn Dixie seeks recovery for any such "bodily injury" as neither it, nor its employees, agents, or otherwise suffered any such injury. Rather, Winn Dixie appears to seek recovery of the purchase price of the shopping carts and incidental costs related to the defense of various lawsuits brought against it. *See generally*, Compl.

  24.  "Occurrence" is defined in the Policy as an "accident." Policy, Sec. V, ¶ 13.

25. However, in the Underlying Litigation, rather than an "accident," Winn Dixie generally asserts that the shopping carts manufactured by Cart Source deviated from the agreed specifications rendering them dangerous and defective. *See generally*, Compl. However, such a claim does not arise out of an "occurrence" under the Policy.

26. Florida courts generally apply the substantive law of the state in which the insurance contract is executed to determine coverage. *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988). Yet, some courts have held that the delivery of the policy to the insured can constitute the "last act" necessary to execute a contract. *See, e.g., Bloch v. Berkshire Ins. Co.,* 585 So. 2d 1137, 1138 (Fla. 3d DCA 1991). Thus, either Florida or Ohio law applies. In any event, both Florida and Ohio law support the same conclusion that the Policy does not cover the claims in the Underlying Litigation.

27. For instance, should Ohio law apply, the Policy would not cover the alleged claims. *Westfield Ins. Co. v. Custom Agri Sys.*, 979 N.E.2d 269, 273 (Ohio 2012) (claims of faulty or defective workmanship or manufacture are generally not covered, except for consequential damages, because they are not fortuitous)*, see also Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.,* 508 F.2d 417, 419-20 (7th Cir. 1975) (defective manufacture of tennis racket frame is not an occurrence; applying Ohio law).

28. Additionally, the Policy requires a finding of "property damage," which is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured."

Policy, Sec. I, ¶ 17. But here, there has not been any allegation of physical damage to any tangible property, such as the shopping carts themselves.

29. Further, faulty workmanship in the insured's product cannot constitute either an "occurrence," or "property damage." *See Custom Agri Sys.*, 979 N.E.2d at 274.

30. Additionally, the plain language of the exclusions in the Policy make clear that the underlying claims are not covered. First, exclusion (b) bars coverage for damages for "property damage" that the insured is obligated to pay by reason of assumption in a contract, but not those damages which the insured would have in absence of the contract. To the extent Winn Dixie seeks entitlement to a refund of the shopping cart's purchase price pursuant to the parties' contract, such potential liability of Cart Source constitutes damages Cart Source would be obligated to pay by reason of assumption in a contract that would not have arisen in the absence of said contract, which are directly excluded from coverage by this provision.

31. Further, exclusions (k)-(n) of the Policy are commonly referred to as the "business risk" exclusions. Exclusions (k) and (j) exclude coverage for "property damage" to the insured's own "product" or "work," which includes products manufactured and sold by the insured and work performed by the insured. Exclusion (m) excludes "property damage" to property that is not physically injured arising out of a deficiency or dangerous condition in the insured's product, or because of the insured's failure to perform a contractual agreement according to its terms. Exclusion (n) excludes coverage for "property damage" for any loss, cost or expense due to the

withdrawal, recall or removal of the insured's product because of a suspected or known defect, deficiency or dangerous condition on it.

32.  Both Florida and Ohio courts have determined that where a suit seeks damages due to faulty workmanship in a product sold, constructed, or manufactured under a contractual agreement, and there is no consequential damage beyond damage to that product, the "business risk" exclusions, (k)-(n), exclude coverage. *See, e. g. Commercial Union Ins. Co. v. R.H. Barto Co., Div. of Atlas Air Conditioning Corp.*, 440 So. 2d 383, 386 (Fla. 4th DCA 1983) ("the risk a contractor takes that he will do defective work or furnish inadequate material is a business risk not insured against;" finding claim for allegedly defective air conditioner system and loss of use of building was excluded under the business use exclusions); *Aetna Cas. & Sur. Co. of Am. v. Deluxe Sys.*, 711 So. 2d 1293, 1297 (Fla. 4th DCA 1998); (finding no coverage for claim related to defective shelving unit components, insured's advice in selecting the shelving and loss of use of warehouse where shelving was installed); *Amerisure Ins. Co. v. Auchter Co.*, No. 3:16-cv-407-J-39JRK, 2017 U.S. Dist. LEXIS 215367, at *33-34 (M.D. Fla. Sep. 27, 2017) ("It is well-settled under Florida law that when damages in an underlying claim include only the costs associated with the repair, removal, and/or replacement of defective work without any allegations of physical injury to 'some other tangible property,' there is no 'property damage' under the Policy, and therefore no coverage. In other words, 'there is a difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for

'property damage.'"); *see also Monarch Constr. Co. v. Great Am. Ins. Co.*, No. C-960645, 1997 Ohio App. LEXIS 2716, at *10 (Ohio 1st DCA June 25, 1997) ("All of the claims which the insurers are being asked to defend and indemnify relate to Monarch's alleged failure to comply with contractual obligations or implied warranties resulting in monetary damages. There is nothing in the record to support Monarch's argument that the underlying claims allege property damage as defined by the language of the policies, as there is no physical injury or loss of use of tangible property.").

33. Accordingly, in this case, it appears that Winn-Dixie's claims against Cart Source alleged in the Complaint in the Underlying Action are not initially covered and, even if they were, would be excluded from coverage under the various exclusionary sections of the Policy identified above as there is no allegation of damages that meets the definition of "property damage."

34. Because there is a dispute between the parties, Westfield seeks clarity to resolve any doubt and uncertainty regarding coverage under the Policy of Winn-Dixie's claims as alleged in the Complaint in the Underlying Action.

35. Thus, Westfield files this action for declaratory judgment seeking a judicial declaration that the plain language of the Policy does not provide Cart Source coverage for Winn Dixie's claims as alleged in the Complaint in the Underlying Action.

36. Westfield has complied with all conditions precedent to the filing of this action.

37. Westfield asserts that there is at least some ambiguity, doubt, and/or uncertainty as to its duties, rights, and obligations with respect to the Underlying Action under the terms of the Policy and applicable law.

38. Westfield hereby seeks a declaration from the Court on the following issue – whether the claims/issues in the Underlying Action give rise to any coverage under the Policy or whether such claims are excluded under the Policy exclusions contained in above cited sections.

39. Westfield has a present bona fide need for a declaration with respect to its rights and obligations under the Policy.

40. Westfield's rights and obligations under the Policy and applicable law are dependent on this Court's findings of fact and/or application of applicable statutes and case law.

41. Cart Source's interest in this declaration of rights is actual, present, adverse, and antagonistic in fact and/or in law to Westfield's interests.

WHEREFORE, Westfield hereby respectfully requests this Court enter a judgment declaring Westfield's rights as outlined above and for any ancillary or other issues necessary to resolve these questions, and for such further relief as the Court may deem just and proper.

                                          CARR ALLISON

                                          */s/ C. H. Houston III*
                                          Steven L. Worley
                                          Florida Bar No. 159719
                                          C. H. Houston III
                                          Florida Bar No. 100268

200 W. Forsyth St., Ste. 600
Jacksonville, Florida 32202
Telephone: (904) 328-6456
Facsimile: (904) 328-6473
Primary Email: sworley@carrallison.com
Primary Email: chhouston@carrallison.com
Secondary Email: nwelsh@carrallison.com
*Attorneys for Plaintiff Westfield Insurance Company*